## UNITED STATES v. ASHFORD et al.
### No. 11170.

Circuit Court of Appeals, Eighth Circuit.
Dec. 1, 1938.

Thomas Harris, Atty., Department of Justice, of Washington, D. C. (Charles E. Collett, Acting Asst. Atty. Gen., Joseph T. Votava, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., and Oscar Provost, Atty., Department of Justice, and Robert M. Vaughan, Atty., Department of Justice, both of Washington, D. C., on the brief), for appellant.

Robert G. Fuhrman, of Pender, Neb., for appellees.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This was an action at law brought by the United States upon four bonds given by the State Bank of Winnebago, Nebraska, to secure the deposit of Indian funds in said bank. Upon these bonds appellees were sureties. The obligation in each of these bonds was the same and is as follows: "Now therefore, if the above bounden State Bank of Winnebago shall well and truly pay the interest on the money so deposited, or that may hereafter be deposited in said bank at the rate of 3 per cent per annum on check accounts, to be computed on actual daily balances, and at 5 per cent per annum on time deposits of either six or twelve months, and shall well and truly account for all such deposits now in said bank and which may hereafter be made therein, together with all unpaid interest now accrued, and which may hereafter accrue thereon, and hold the United States, the Officers thereof, and the individual depositors harmless from all loss by reason of such deposit, or deposits and interest thereon, and shall well and truly pay over the same on demand of such depositors, or to the persons entitled thereto under the instructions of the Commissioner of Indian Affairs, in manner as provided hereinabove, then the foregoing obligation shall be void, and otherwise to remain in full force and effect".

In March, 1928, the Secretary of the Interior issued regulations requiring that personal surety bonds be executed by four sureties instead of two, and thereafter the Bank of Winnebago was notified of these regulations and that it would be necessary for it to comply therewith. The bank wrote that it was unable at that time to procure the additional signatures. The Assistant Commissioner of Indian Affairs replied that the existing bonds could remain in force temporarily, but that, if acceptable security were not furnished within a reasonable time, say one year, the office would feel justified in withdrawing the deposit. The efforts of the bank to find additional bondsmen who could qualify were unsuccessful, and in June, 1929, William Vogt, who was cashier or vice-president of the bank, and active as an executive officer, went to Washington "to make some different arrangement about these security

bonds". He first talked with a Mr. Greenwood who had charge of depository bonds in the Office of Indian Affairs. Vogt told Greenwood that it was impossible to get the additional bondsmen; that the bank could pay $5,000 on January 15th and $2,000 on July 15th of each year for about four years, and keep up the interest, with the objective of getting the deposit down to about $25,000 or $30,000, when it was thought new surety bonds could be procured. The deposit of appellant in the bank, June 29, 1929, amounted to $55,375. Mr. Greenwood approved this proposed arrangement, but said: "While you are here I want to call in the Commissioner of Indian Affairs and have him approve this arrangement for a gradual reduction".

Contact was made with Commissioner Burke. Mr. Greenwood stated the proposed arrangement to him and Mr. Vogt explained the same matter, telling the Commissioner, as he testifies, that the bank could not get four signers on each bond, and that, if this demand were persisted in, "it would close the bank". The Commissioner replied that he did not wish to cripple the bank, that the agreement was "alright" and said: "When you get home you write us a letter confirming this agreement". This Vogt did by the following letter:

June 19, 1929. "In accordance with our conversation on my recent visit to your city I am writing you setting out the plan discussed, providing for a gradual and definite reduction of our deposit of Indian funds from the Winnebago Agency, Nebraska. Payments to be made as follows:

| | |
|---|---|
| $5000.00 Jan. 15, 1930 | $2000.00 July 15, 1932 |
| 2000.00 July 15, 1930 | 3000.00 Jan. 15, 1933 |
| 3000.00 Jan. 15, 1931 | 2000.00 July 15, 1933 |
| 2000.00 July 15, 1931 | 3000.00 Jan. 15, 1934 |
| 3000.00 Jan. 15, 1932 | |

Thanking you for the courtesy extended to me when in your office, I am
"Yours very truly,
"Wm. Vogt, Jr.
"V. Pt."

In a reply letter the Commissioner said: "Jun. 25, 1929.

"It is noted that excepting January 15, 1930, the amount stipulated to be paid on January 15 of each following year is $3,000. It is the recollection of the Office that you stated upon the occasion of your recent visit here, that your institution could pay $5,000 in January of each year. By remitting this amount and $2,000 on July 15, the desired reduction could be made

within four years instead of five years, which would be the period required under the plan you now propose. You are requested to reconsider the matter and to advise whether you can arrange to make the larger annual payment".

To this Vogt rejoined by letter of June 29th saying, in part: "We believe there will be no question about making the payments as outlined in our letter of June 19th. However, it is our desire and intention to accomplish the desired reduction in the shortest possible time and it is hoped that conditions will permit us to make the reduction in the time requested."

The final step in consummation of the arrangement is contained in the Commissioner's letter of July 8th, 1929:

"The receipt is acknowledged of your letter of June 29, with further reference to the plan proposed in your letter of June 19, for effecting a reduction in your deposit of Indian funds.

"You state that your institution will have no difficulty in making the payments outlined, and indicate that larger sums will be remitted if conditions permit. This is satisfactory to the Office and the plan is approved, but on the following conditions:

"1. That an acceptable bond or bonds will be substituted for your present bonds, at the earliest possible date.

"2. That the right to make withdrawals at any time to meet the requirements of Winnebago Agency shall not be affected by this arrangement".

It is conceded that appellees, who were gratuitous sureties, were never notified of the demand for additional sureties, of the condition of the bank with respect thereto, the attitude of the government, nor the arrangement made by agreement between the bank and the United States through the Commissioner of Indian Affairs.

The issue raised by the pleadings, determined by the trial court, and presented on this appeal, is whether there was such a change in the contract between the Commissioner of Indian Affairs and the bank as to release the sureties. A jury was waived by stipulation and the court made findings of fact and conclusions of law in favor of appellees and entered judgment accordingly. The questions presented are whether the findings of fact are supported by substantial evidence, and whether the trial court, upon the facts found, correctly applied the law.

It is first contended by appellant that no binding agreement for an extension of time was entered into between the bank and the United States. It is pointed out that "the reason most commonly given for the rule that an extension of time to the principal debtor discharges the surety is that the extension impairs the surety's right of subrogation". And this is the complaint emphasized by appellees in the instant case. In this connection it is pointed out by counsel for appellant that no offer of either party was ever unconditionally accepted by the other. In support of this contention language of the parties in the letters that passed between them is recited. In Vogt's letter of June 19th there was a departure from the terms discussed during his visit in Washington. The withdrawal of $5,000 was limited to January 15, 1930, and was reduced to $3,000 for succeeding Januaries. In his letter of June 25, 1929, the Commissioner calls attention to this discrepancy and requests reconsideration of the matter. In his reply, June 29, 1929, Vogt commits the bank to no enlargement of the terms of his letter of the 19th, but expresses confidence in the bank's ability to make the payments outlined in that letter, and its intention to make the reduction in the shortest possible time. In this last communication on its part the bank did not promise to discharge the obligation during the alleged extension period. It was free to pay off its obligation at any time. By letter of July 8, 1929, the Commissioner consented to the payments proposed in the Vogt letter of June 19, 1929, but upon two conditions:

"1. That an acceptable bond or bonds will be substituted for your present bonds at the earliest possible date.

"2. That the right to make withdrawals at any time to meet the requirements of Winnebago Agency shall not be affected by this arrangement".

This latter condition left the ordinary disposition of the funds unaffected, and with the right of withdrawal at any time demanded by the requirements of the trust unimpaired. The Commissioner was not bound to extend any payment beyond the necessities of the administration of Indian affairs.

The bonds recognized both time deposits and checking deposits. So far as appears, it was well within the power and authority of the Commissioner to change, from one to the other, the funds on deposit or thereafter to be deposited. In this case, under

the condition reserved, the funds were still capable of being withdrawn if needed after the manner of checking accounts; but, at most, under the terms of the agreement with the bank, they were converted into six months' time deposits and drew interest as such. The fact that they were not held in the form of time certificates should not affect their status.

Counsel for appellant insist that the arrangement between the United States and the bank was invalid as a contract because wanting in consideration, and beyond the authority conferred upon the Commissioner of Indian Affairs. Because of our opinion reached as to the legal effect of the arrangement made by the bank and the Commissioner with reference to the semi-annual withdrawals to be made, we find it unnecessary to pass upon these contentions.

William Greenwood, Assistant Chief of the Fiscal Division of the Office of Indian Affairs testified that "the deposit was an open checking account, but it was considered in the office as a time account in that it was not actively checked against. The disbursing officer could not have withdrawn all of it or any part of it at any time without approval of the Office". But whether regarded as a checking account or as a time account, it fell within the terms of the bond, and as such was within the administrative discretion of the Commissioner, who was free to withdraw any part of this deposit at any time to meet the requirements of the Agency. In this view it is difficult to perceive any departure from the contract of the sureties which may vary or enlarge their liability.

The arrangement between the bank and the Office of Indian Affairs continued in effect and payments thereunder were made until July, 1931. The check for $3,000 to cover the withdrawal agreed to be paid in the month of January, 1932, was dishonored, and, on October 24, 1932, the bank closed. The court found that during the months of June and July, 1929, the bank was possessed of sufficient liquid assets with which to pay in full the deposit then existing; but that at the time of closing those assets "were practically all, if not wholly dissipated".

The question resolves itself not into whether the dealings between the bank and the Office of Indian Affairs constituted a departure from the contract of suretyship which operated to vary the liability of the sureties, but whether the government failed in a duty to withdraw its funds in view of the condition of the bank as disclosed by the representative of the bank at the Washington conference. Ordinarily no such duty is imposed under the situation here presented, nor is such an issue tendered by the pleadings. It must be remembered that we have not here a note or other evidence of indebtedness, payment of which has been extended beyond its due date. The deposit of funds in the Winnebago bank was addressed to the reasonable discretion of the Commissioner of Indian Affairs.

Mr. Burke testifies that Vogt did not say that the bank would have to close. The bank was not a large one, and its officers felt that this Indian Deposit was rather larger than a bank of this size should carry. The bank wished to reduce it, and the government was agreeable to that reduction.

So far as appears from this record the government retained the right to withdraw at any time any amount necessary to meet the requirements of the Agency. It had reason to believe that the bank could pay the amounts agreed upon; and the mere fact that the immediate withdrawal of a deposit of $55,375 might prove embarrassing falls short of a confession or implication of insolvency. We think that it was not unreasonable under the circumstances for the Commissioner to refrain from withdrawing the entire deposit, in view of the gradual reduction proposed; and that reduction was carried out for a period of at least two years after the arrangement was made. In as much as the right to withdraw all necessary funds was reserved by the Commissioner, and in as much as the contract imposed no limit upon his discretion in withdrawing deposits as necessity might require, we are unable to perceive how the so-called agreement as to semi-annual payments changed the terms of the contract of suretyship in any material sense. As it turned out it probably would have been to the advantage of the sureties if the Commissioner had insisted upon the immediate withdrawal of the deposit unless additional bonds were given; but he had neither impelling reason nor legal duty so to do.

In this view it is our opinion that the judgment should be reversed and the case remanded for further proceedings not inconsistent with this opinion.